EGAN, C.J.
*9 Plaintiff sought a declaration that an ordinance enacted by the City of Grants Pass, requiring that marijuana plants grown at home for personal use be grown indoors, is preempted by ORS 633.738, which prohibits a local government from enacting or enforcing local limits on the production or use of plant seeds. Plaintiff appeals from a judgment of the trial court holding that the city's *900 ordinance is not preempted by the statute, because the growing of marijuana plants at home is not subject to ORS 633.738. We agree with the trial court and affirm.
We begin with a brief description of the statutory context. In 1998, Oregon voters approved the Oregon Medical Marijuana Act (the OMMA), now codified at ORS 475B.785 to 475B.949, which authorizes the licensing, growing, processing, possession, prescription, and dispensing of marijuana for medical use, and exempts its use under the act from criminal liability. The Oregon Health Authority administers the OMMA.
In 2014, voters approved the Adult and Medical Use of Cannabis Act (the AMCA), now codified at ORS 475B.010 to 475B.545, which legalizes adult recreational use of marijuana. The Oregon Liquor Control Commission (OLCC) administers the licensing and permitting of producers, processors, wholesalers, and retailers of marijuana for recreational and medical use under the AMCA.
The AMCA also legalizes the noncommercial production, making, processing, possession, and storage of marijuana and marijuana products "at a household." ORS 475B.301(1). Persons who grow marijuana plants at home for personal noncommercial use are not subject to the licensing and permitting requirements that apply to commercial producers, processors, wholesalers, and retailers of marijuana under the AMCA, "if the total amount of homegrown marijuana at the household does not exceed four marijuana plants at any time." Id. ORS 475B.015(10) defines "homegrown" marijuana as marijuana plants or marijuana products "grown or made by a person 21 years of age or older for noncommercial purposes." ORS 475B.306 provides that *10 a person may not "produce, process, possess or store homegrown marijuana" or marijuana products where they "can be seen by normal unaided vision from a public place."
The city has enacted an ordinance requiring that, after December 31, 2015, marijuana "cultivation, drying, curing, storage, production or processing" for recreational or medical use "shall be conducted indoors." Grants Pass Municipal Code (GPMC) 5.72.030(2). There is no similar restriction in the AMCA, but plaintiff concedes that restricting growing of marijuana to indoor areas "may not conflict with any restriction" in the AMCA. Plaintiff brought this action seeking a declaration that the city's ordinance is preempted by ORS 633.738, which provides, as relevant:
"(1) As used in this section:
"* * * * *
"(b) 'Nursery seed' means any propagant of nursery stock as defined in ORS 571.005.
"(2) *** [A] local government may not enact or enforce a local law or measure, including but not limited to an ordinance, regulation, control area or quarantine, to inhibit or prevent the production or use of agricultural seed, flower seed, nursery seed or vegetable seed or products of agricultural seed, flower seed, nursery seed or vegetable seed . The prohibition imposed by this subsection includes, but is not limited to, any local laws or measures for regulating the display, distribution, growing, harvesting, labeling, marketing, mixing, notification of use, planting, possession, processing, registration, storage, transportation or use of agricultural seed, flower seed, nursery seed or vegetable seed or products of agricultural seed, flower seed, nursery seed or vegetable seed."
(Emphasis added.) It is undisputed that the city's ordinance applies to the commercial, medical, and homegrown marijuana, and it is undisputed that the regulation of the growing of commercial, medical, and nonmedical marijuana is explicitly exempted from ORS 633.738. See ORS 475B.928; ORS 475B.940; ORS 475B.486. Plaintiff contended that the home growing of marijuana is not exempted from ORS 633.738, and that, by requiring that marijuana plants grown at home be grown indoors, the city has enacted a local law *11 "inhibiting or preventing" the production or use of "flower seed" or "nursery seed" or their products, as prohibited by ORS 633.738. On the parties' cross-motions for summary judgment, the trial court rejected plaintiff's contention, denied plaintiff's motion, and granted the city's motion. On appeal, plaintiff contends that the trial court erred in its construction of ORS 633.738 and *901 that she is entitled to judgment as a matter of law.
The City of Grants Pass is a "home rule" city. The city's charter states that the city "shall have all powers which the constitutions, statutes, and common law of the United States and of this State expressly or impliedly grant or allow municipalities." The charter provides that it is to be "liberally construed to the end that the city shall have all powers necessary or convenient for the conduct of its municipal affairs." The city's ordinances are valid if they are authorized by the local charter, and if they do not contravene state or federal law. Rogue Valley Sewer Services v. City of Phoenix , 357 Or. 437, 451, 353 P.3d 581 (2015).
In determining whether a local ordinance contravenes state law, the court will assume that a statute does not mean to displace "local civil or administrative regulation of local conditions *** unless that intention is apparent." Id . at 450, 353 P.3d 581 (quoting La Grande/Astoria v. PERB , 281 Or. 137, 148-49, 576 P.2d 1204, adh'd to on recons , 284 Or. 173, 586 P.2d 765 (1978) ). A statute displaces a local ordinance if it "unambiguously expresses an intention to preclude local governments from regulating" in the same area as that governed by the statutes. Rogue Valley Sewer Services , 357 Or. at 450, 353 P.3d 581 (quoting Gunderson, LLC v. City of Portland , 352 Or. 648, 663, 290 P.3d 803 (2012) ) (emphasis in Rogue Valley Sewer Services ). Thus, our inquiry in determining whether GPMC 5.72.030 is preempted by ORS 633.738 is whether the statute unambiguously expresses an intention to preclude the city's regulation of the home growing of marijuana plants.
In plaintiff's view, the legislature's unambiguous intention in ORS 633.738 to preempt local regulation is clear from the statute's text, and that, by requiring that marijuana plants be grown indoors, GPMC 5.72.030 "inhibits or *12 prevents" the production or use of "flower seed" or "nursery seed" or the "products" of those seeds. For the reasons explained below, we conclude that, contrary to plaintiff's contention, homegrown marijuana seeds and plants are not "flower seed" or "nursery seed" or their "products" subject to ORS 633.738.
For purposes of ORS 633.738, ORS 633.511(6) defines "flower seed" as
"seeds of herbaceous plants grown for their blooms, ornamental foliage or other ornamental parts, and commonly known and sold in this state under the name of flower or wildflower seeds."
Plaintiff contends that homegrown marijuana plants are grown for their "blooms," i.e. , their flowers, and that, therefore, their seeds are "flower seeds," as defined in ORS 633.511(6). We readily reject that contention. It is clear from the statutory definition of "flower seeds" that "blooms" pertain to flowers grown for ornamental purposes, not to flowers grown for medical or recreational consumption or processing. Although the marijuana plant is an herbaceous plant, the "useable" portions of the plant-its dried flowers and leaves, ORS 475B.015(36)(a) -are not grown for ornamental purposes.[1] Additionally, marijuana seeds are not "commonly known and sold" in Oregon under the name of "flower" or "wildflower seeds." We conclude that the seeds of the marijuana plant are not "flower seeds" within the meaning of ORS 633.738.
Plaintiff's additional contention that marijuana seeds are "nursery seed" under ORS 633.738 fails as well. ORS 633.738(1)(b) states that "nursery seed" is "any propagant of nursery stock as defined in ORS 571.005."[2] "Nursery stock" is, in turn, defined in ORS 571.005(5) as
"all botanically classified plants or any part thereof, such as floral stock, herbaceous plants, bulbs, buds, corms, culms, roots, scions, grafts, cuttings, fruit pits, seeds of fruits, *13 forest and ornamental trees and *902 shrubs, berry plants, and all trees, shrubs and vines and plants collected in the wild that are grown or kept for propagation or sale."
Plaintiff contends that marijuana plants grown at home are "nursery stock," because they are botanically classified.
Plaintiff overlooks the second portion of the definition of "nursery stock," that the plants be "grown or kept for propagation or sale."[3] There is no statutory definition of "propagation" for purposes of ORS 571.005. Propagation is defined in Webster's Third New Int'l Dictionary 1871 (unabridged ed 2002) as "the act or action of propagating: as in a : natural reproduction : production of young." "Propagating" is, in turn, defined as "to cause to continue or increase by natural reproduction." Id .
The AMCA also includes a definition of "propagate," ORS 475B.015(33) ("to grow immature marijuana plants or to breed or produce marijuana seeds").[4] Additionally, the *14 OMMA states that, for purposes of the OMMA, "seeds of the plant Cannabis family Cannabaceae are a propagant of nursery stock under ORS 571.005." ORS 475B.940. Those definitions show that, for purposes of the AMCA and the OMMA, the seeds of the marijuana plant are a propagant; but those definitions do not answer the question whether marijuana plants grown and kept at home as permitted by ORS 475B.301, are grown or kept for propagation or sale within the meaning of ORS 571.005.
Plaintiff contends that, although propagation is not the primary use of marijuana plants grown at home, among the lawful uses of the plant is the use of its seeds to grow new plants, which plaintiff contends is "propagation," as the term is defined in ORS 571.005. We disagree. Although saved seeds may be used to grow up to four marijuana plants, the requirement in ORS 571.005 that the plants be kept "for propagation or sale" suggests a commercial use. That conclusion is borne out by the legislature's "findings and declarations," set forth in ORS 633.733(2), which focus on the "substantial economic benefits" of seed production and use, and note the adverse effect to "seed product industries" of a patchwork of local regulations:
"The Legislative Assembly finds and declares that:
"(a) The production and use of agricultural seed, flower seed, nursery seed and vegetable seed and products of agricultural seed, flower seed, nursery seed and vegetable seed are of substantial economic benefit to this state;
*903 "(b) The economic benefits resulting from agricultural seed, flower seed, nursery seed and vegetable seed and seed product industries in this state make the protection, preservation and promotion of those industries a matter of statewide interest that warrants reserving exclusive regulatory power over agricultural seed, flower seed, nursery seed and vegetable seed and products of agricultural seed, flower seed, nursery seed and vegetable seed to the state; and
"(c) The agricultural seed, flower seed, nursery seed and vegetable seed and seed product industries in this state will be adversely affected if those industries are subject to a patchwork of local regulations."
*15 ORS 633.733(2). We conclude that "propagation," as used in ORS 571.005, refers to commercial propagation, and that homegrown marijuana plants are not kept for propagation within the meaning of that statute and therefore are not "nursery stock."
Plaintiff points out that ORS 475B.940 expressly exempts from ORS 633.738 the production and processing of marijuana seeds under the OMMA, and that, "notwithstanding ORS 633.738," ORS 475B.486(2) and 475B.928 explicitly permit local governments to place reasonable restrictions on commercial businesses relating to marijuana operations. Plaintiff notes the absence of similar provisions in the OMMA or AMCA relating to the home growing of marijuana plants. Instead, ORS 475B.306 merely prohibits a home grower from producing, processing, possessing or storing homegrown marijuana where it "can be seen by normal unaided vision from a public place." Plaintiff contends that the absence of an explicit exclusion from ORS 633.738 for home growers indicates that the legislature did not intend to carve an exception for home growing of marijuana from ORS 633.738. We think it more likely, however, that the absence of an explicit exclusion from ORS 633.738 is a reflection of the legislature's view, like ours, that the home growing of marijuana is not subject to ORS 633.738 ; therefore, there is no need to exempt it. We conclude that marijuana seeds from plants grown at home do not fall within the text of ORS 633.738 and that, therefore, they are not subject to the statute's preemptive effect. The trial court did not err in granting defendant's motion for summary judgment and in denying plaintiff's motion.
Affirmed.

Marijuana seeds are not considered to be "usable" portions of the plant. ORS 475B.015(36)(b)(A).

Webster's Third New Int'l Dictionary 1871 (unabridged ed. 2002) defines a "propagant" as "a plant part used for vegetative propagation." The use of the term "propagant" thus would appear to express an intention to encompass within "nursery seed" parts of the plant other than seeds used for propagation.

We reject plaintiff's contention that, under the rule of the last antecedent, because there is no comma before the qualifying phrase "that are grown or kept for propagation," that requirement applies only to the last antecedent-"all trees, shrubs and vines and plants collected in the wild." The application of rule of the last antecedent is contextually dependent and applies only "where no contrary intention appears." State v. Webb , 324 Or. 380, 386, 927 P.2d 79 (1996) (describing principle). As we recently explained in Price v. Lotlikar , 285 Or. App. 692, 703, 397 P.3d 54 (2017), when several words are followed by a clause which is applicable as much to the first and other words as to the last, the clause should be read as applicable to all. Here, applying the rule of the last antecedent in the manner suggested by plaintiff, while grammatically plausible, would be contrary to that requirement. It would also be contrary to the intent expressed in ORS chapter 571 to regulate as nursery stock plants or plant parts grown or kept for commercial purposes. We conclude for those reasons that the phrase "that are grown or kept for propagation" applies to all of the botanically classified plants listed in ORS 571.005(5).

We note that, in the AMCA, the terms "propagate" or "propagation" are used with reference to activities permitted to be conducted by licensed commercial marijuana producers or their employees. See, e.g. , ORS 475B.070 (requiring licensed marijuana producers to meet public health and safety standards and best industry practices established by the OLCC relating to "the propagation of immature marijuana plants and marijuana seeds"); ORS 475B.177 (requiring that the OLCC develop and maintain a system for tracking the "propagation of immature marijuana plants and the production of marijuana by a marijuana producer"); ORS 475B.261 (requiring that an individual who performs work for or on behalf of a licensee must have a permit issued by OLCC if the individual participates in propagation or recording of propagation of marijuana); ORS 475B.486 (permitting local governments to place reasonable conditions on the manner in which licensed marijuana producers or certificated researchers may "propagate immature marijuana plants"). Only licensed producers are authorized to "propagate" marijuana plants.